IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ROMA BUSBY McDONALD**, | ) |
| | ) |
| **Plaintiff**, | ) |
| | ) |
| v. | )  **CIVIL ACTION NO. 08-BE-2411-S** |
| | ) |
| **MICHAEL J. ASTRUE**, | ) |
| **Commissioner of the Social**, | ) |
| **Security Administration** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

### I. INTRODUCTION

On August 2, 2004, the Claimant, Roma Busby McDonald, applied for supplemental security income under Title XVI of the Social Security Act. (R. 25). The Claimant alleges disability commencing in November 2004,[1] because of back, neck, and knee pain and carpal tunnel syndrome. (R. 26). On February 10, 2005, the Commissioner denied the claim initially. (R. 27). The Claimant filed a timely request for a hearing before an Administrative Law Judge (ALJ), and the ALJ held a hearing on November 29, 2006. (R. 24). In a decision dated July 2, 2007, the ALJ found that the Claimant was not disabled as defined by the Social Security Act, and thus, was ineligible for supplemental security income. (R. 15). On October 24, 2008, the Appeals Council denied the Claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 5).

---

[1]In the ALJ's decision, he lists the onset date of disability as August 2, 2004. (R. 15). However, in the transcript of the ALJ hearing, the claimant amended her onset date to November 2004. (R. 194).

1

The Claimant has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3). For the reasons stated below, this court will REVERSE and REMAND the decision of the Commissioner.

## II. ISSUE PRESENTED

Claimant raises several issues on appeal, one of which is whether the ALJ improperly rejected the opinion of Claimant's treating physician. Because of the resolution of this issue, the court need not address the remaining issues.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in the evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look

only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and "take account of evidence that detracts from the evidence relied on by the ALJ." *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal on of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and give, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R.§§ 404.1520, 416.920.

The Commissioner must accord the opinions of the treating physician substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). Absent a showing of *good cause* to the contrary, the Commissioner cannot discount the treating physician's opinion. *Id.* "Good cause" is a fairly broad standard and the Eleventh Circuit has recognized its existence where the opinion of the treating physician is accompanied by no objective medical evidence, is

wholly conclusory, or is contradicted by the physician's own treatment notes. *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). The Eleventh Circuit has also found "good cause" where the "treating physician's opinion was not bolstered by the evidence." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004); *see also Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) ("[T]he ALJ may reject any medical opinion if the evidence supports a contrary finding.").

However, where medical evidence does not conclusively counter the treating physician's opinion, and no other good cause is presented, the Commissioner cannot discount the treating doctor's opinion. *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1986). If the ALJ decides to discount the opinion of the treating physician, he must "clearly articulate" his reasons for doing so. *Phillips*, 357 F.3d at 1241. The ALJ must make clear the weight accorded to each item of evidence and the reasons for the decision so that the reviewing court may determine whether the decision is based on substantial evidence. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

## V. FACTS

The Claimant has an eighth grade education and was forty-two years old at the time of the administrative hearing, (R. 196, 201). Her past work experience includes employment as a construction painter, wall paperer, cashier/store clerk, and as a photo lab processor. (R. 21). The Claimant originally alleged she was unable to work because of back and knee pain; however, at the ALJ hearing the claimant alleged she was unable to work because of chronic neck pain, lower back pain, knee pain, and carpal tunnel syndrome. (R. 203). The Claimant testified that she sustained fractures to both her knees in 1984 when she, a pedestrian, was struck by a car. (R. 194). The Claimant was also in a car accident in 2004 that caused injuries to her lower back and

neck. *Id.*

*Physical Limitations*

As noted above, the Claimant suffered bilateral knee fractures in 1984 that resulted in an open reduction with internal fixation. (R. 165). She continued to experience knee and lower back pain that required treatment at the Community Care Center in Pratt City. (R. 70-90). In 2003, the Claimant had a series of five epidural blocks in her lower back that she claimed made her feel worse. (R. 207-208). Eventually, the Claimant developed degenerative joint disease in her knees and underwent surgery in February 2004 because of symptoms of mechanical locking in her right knee. (R. 158).

In November 2004, the Claimant was involved in a second motor vehicle accident and sustained injuries to her neck. (R. 20). Dr. Ken Jaffe, an orthopaedic physician, treated Claimant on three different occasions from June to October in 2005. (R. 140-144). According to Dr. Jaffe's records, Claimant's MRI showed "significant cervical disk [sic] disease mainly in the C4-5 region" (R. 140). Another chart note indicates that the MRI showed "disk [sic] disease and disk [sic] osteophyte complex at multiple levels, most severe at C4-5 and C5-6 with possible component of subligamentous herniation at C5-6." (R. 141). The MRI also showed left root impingement at the C6-7 level. (R. 141). Regarding her back, based on x-rays of her spine, Dr. Jaffe found "significant degeneration in her L5-S1 with moderate degenerative changes in the lower lumbar region." (R. 142). His records indicate that Dr. Jaffe and Claimant discussed the option of epidural blocks, but that she did not want to do them because in her previous experience, the epidural blocks had made her pain worse. (R. 140, 207). Dr. Jaffe also noted that "[b]ased upon the MRI findings and her continued pain, I feel that she would be a candidate for

surgical intervention and possible discectomy and fusion." ( R. 140).

In July 2006, Dr. Bruce Romeo, a consultative examiner, saw Claimant. (R. 165-173). Dr. Romeo examined Claimant's joints and stated that no deformity, tenderness, synovitis, or effusion existed. (R. 167). Additionally, Dr. Romeo found normal range of motion in the cervical and dorsolumbar spines, shoulder, hip, knees, and ankles. (R. 169-170). Dr. Romeo found the Claimant's gait to be normal and stated that she did not have any spasms or deformity of the back. Also, Dr. Romeo concluded that Claimant was able to stoop, kneel, crouch, tandem walk, and walk on heels and toes. (R. 167). Dr. Romeo also found that Claimant's muscle strength was 5/5, sensory was intact, reflexes were equal bilaterally, and straight leg raising tests were negative. (R. 168). Finally, Dr. Romeo stated that the claimant could sit with no limit and could stand and walk one hour at a time for a total of eight hours. (R. 171).

In 2006, Dr. Mark Wilson, an internist and pain management specialist, examined Claimant at Cooper Green Hospital's pain clinic. (R. 175-181). On June 9, 2006, his clinic notes indicate that he reviewed x-rays and referenced MRIs of the knee and neck. His examination revealed tenderness in her neck, some pain with range of motion in her right shoulder, and spasms and tenderness in her lower spine. (R. 177). His impressions were post-traumatic knee painm and back and neck pain from disc disease as well as depression. Noting her problems functioning with Percocet and Methadone, Dr. Wilson prescribed Lortab 10 and MS Contin, a time-released form of morphine. (R. 177). On a follow up visit in September of 2006, Dr. Wilson noted that she did not experience much improvement with the morphine, although she tolerated it well. He increased the dosage of morphine and also re-prescribed Lortab. (R. 175).

In January of 2007, Dr. Wilson completed a Physical Capacities Evaluation form and stated he was "unsure" how long the claimant could sit during a normal work day, but that she would not be able to be on her feet for more than 2 hours in an 8 hour workday. (R. 179). Dr. Wilson also stated the Claimant could frequently lift up to 10 pounds and occasionally lift up to 25 pounds. *Id.* Dr. Wilson stated that the Claimant could never squat, crawl, or climb, but could occasionally bend. *Id.* Dr. Wilson stated he did not believe the Claimant could sustain full-time work. *Id.* Finally, Dr. Wilson stated that he had not evaluated her upper extremities enough to comment on her reaching and grasping. *Id.*

In January of 2007, Dr. Wilson also completed a Clinical Assessment of Pain form. (R. 180). He stated that the Claimant had pain "to such an extent as to be distracting to adequate performance of daily activities or work." *Id.* Dr. Wilson also stated than an increase in ordinary physical activities would cause an "[i]ncrease in pain to such a degree as to cause serious distraction from tasks or total abandonment of tasks." *Id.* Next, the doctor stated that "[p]ain and/or drug side effects can be expected to serious limit effectiveness [or performing work] due to distraction, inattention, and drowsiness, etc." (R. 181). When asked to what extent treatments had lessened the degree of pain, Dr. Wilson stated that the treatments "helped only partially so far." (R. 181.) Finally, Dr. Wilson added that "x-rays show significant degenerative arthritis of the knees, especially on the right. MRI of the low back on 9/5/2002 showed degenerative disc disease and facet joint arthritis." *Id.*

*The ALJ Hearing*

After the Commissioner denied the claimant's request for supplemental security income, the Claimant requested and received a hearing before an ALJ. (R. 24). At the hearing, she

testified that her pain was in her neck, lower back, and knees and that she suffered from carpal tunnel syndrome. (R. 203). She testified that the pain often started in her neck and then radiated down to her arms and back. (R. 206).

Claimant testified that her functionality and pain level vary depending on the day but she thought that she could stand or sit for 20 or 30 minutes on a normal day. (R. 209-210). The Claimant testified that on her bad days she lies down pretty much all day and on a typical day she needs to lie down for 30 minutes at a time usually more than once a day. (R. 212-213). She has more bad days than good days. (R. 212). The Claimant also testified that she has a driver's license but rarely drives. (R. 198-199).

The Claimant testified that she was a candidate for neck surgery and that she might eventually have the surgery, but she is scared. (R. 206-207). She also testified that she did not want to have epidural blocks, because she had received a series of epidural blocks and they had caused her pain to worsen. (R. 207). Claimant testified that she is taking a series of medications daily, including morphine and Lortab 10's. (R. 203-205).

A vocational expert, Ms. Jacobson, testified concerning the type and availability of jobs that the claimant was able to perform. (R. 218-223). She stated that Claimant did not acquire any work skills that were transferable to other work. (R. 219). The ALJ asked the VE to assume an "individual of Claimant's age, education, and vocational background who is capable of lifting objects weighing up to 10 pounds and can sit for as much as 6 out of 8 hours per day, and stand and walk for as much as 2 out of 8 hours per day. However, the individual would require the ability to sit or stand. The individual would be precluded from repetitive overhead reaching or lifting, as well as pushing or pulling of foot or leg controls. Further, the individual would be

precluded from work around unprotected heights and would be precluded from work that requires the satisfaction of production quotas." *Id.*  The VE testified that these restrictions would prevent the performance of Claimant's past relevant work except the cashier position. *Id.*  The VE also testified that, with these restrictions, the Claimant would only be able to do clerical jobs. *Id.*  The VE then stated that if the Claimant's testimony was fully credible and supported by the record, she would not be able to do any past work or any other work.  (R. 220).  The VE testified that if an individual's pain were moderate, the pain would not impact the performance of job activities, but if the pain were moderately severe to severe, the pain would prevent employment. *Id.*

*The ALJ's Decision*

On July 2, 2007, the ALJ issued a decision finding the Claimant was not disabled under the Social Security Act.  (R. 15).  First, the ALJ found that the Claimant had not engaged in substantial gainful activity since the alleged onset of her disability.  (R. 17).  Next, the ALJ found that the Claimant's degenerative disc disease of the lumbar spine and cervical spine and degenerative joint disease of the right knee qualified as severe impairments; he concluded, however, that these impairments neither singly nor in combination manifested the specific signs and diagnostic findings required by the Listing of Impairments.  (R. 17-18).

The ALJ next evaluated Claimant's residual functional capacity and found that Claimant could lift 10 pounds, sit 6 out of 8 hours a day; stand and walk 2 out of 8 hours per day with a sit/stand option; and could perform a job with the following additional restrictions: no repetitive overhead reaching or lifting, no push/pull movements with the foot; no work around unprotected

heights; and no work with production quotas. (R. 18). In making these findings, the ALJ also considered the Claimant's subjective allegations of pain and recited the Eleventh Circuit's pain standard. (R. 19). The ALJ found that, based on the documentary evidence as a whole, the Claimant's subjective allegations of pain were not fully credible. (R. 20). To support this ruling, he stated that Claimant's medical treatment has been "sporadic in nature" and the "treatment modalities [are not] consistent with the level of limitations alleged;" that her impairments are not "of a severity to warrant further invasive or aggressive treatment;" and that her condition is not "severe enough to warrant hospitalization or frequent emergency room treatment." (R. 20). Further, he stated that no "treating or examining physician indicated that they believed the claimant to be disabled for all work." (R. 20).

Having determined her residual functional capacity, the ALJ found that Claimant could not perform any past relevant work and has no skills transferable to other jobs. (R. 21). However, he determined that jobs exist in significant numbers in the national economy that the Claimant could perform, such as information clerk, receptionist, or gate tender. (R. 22). Therefore, the ALJ determined that Claimant was not disabled within the meaning of Social Security Act. (R. 22).

## VI.  DISCUSSION

The Claimant argues that the ALJ improperly rejected the opinion of Claimant's treating physician, Dr. Wilson.  Dr. Wilson, an internist and pain specialist, prescribed morphine and Lortab for Claimant's daily use to combat her pain, and filled out a capacities form stating that his patient did not have the capacity to sustain full-time work.  Further, he opined that Claimant's pain would be distracting to adequate performance of daily work activities; that ordinary physical

activities (such as walking, standing, sitting, bending stooping, moving of extremities) would increase the level of pain and cause serious distraction from tasks or their total abandonment; that the drugs she took for pain would seriously limit her work effectiveness; and that pain treatments had only partially helped her pain.  The ALJ's decision that Claimant is not disabled from work, that the side effects of her drugs are not disabling, and that her complaints of pain are not credible are directly contrary to Dr. Wilson's opinion.  Accordingly, the court must determine whether the ALJ's rejection of his opinion was proper.

In the instant case, the ALJ ignored Dr. Wilson's statement that Claimant did not have the capacity to sustain full-time work.  In fact, his opinion incorrectly states: "There is no indication that the claimant is disabled for all work due to her impairment, *nor has any treating or examining physician indicated that they believed the claimant to be disabled for all work*." (R. 20) (emphasis added).  Although the issue of a Claimant's capacity to work is ultimately one for the Commissioner (*see* 20 C.F.R. § 416.927(e)), the ALJ's failure to acknowledge this contrary assessment – and his false assertion that no contrary assessment existed – by Claimant's treating physician is a troubling error; statements from medical sources about a claimant's capacities are very relevant evidence, although not determinative.  *See* 20 C.F.R. §§ 416.913(B), 416.927, 4816.945, 416.946(c); SSR 96-5p.

Also  troubling is the ALJ's failure to acknowledge  Dr. Wilson's pain assessment in the ALJ's own application of the pain standard to Claimant's allegations of disabling pain.  Although the ALJ references this part of Dr. Wilson's opinion in his step two findings regarding Claimant's severe impairments, he does not address it in step four, in his application of the pain standard.  Rather, he ignores Dr. Wilson's pain assessment and only mentions the part of Dr.

Wilson's opinion addressing limitations on Claimant's ability to walk and stand for an uninterrupted time period.  Because Dr. Wilson is Claimant's treating physician and a pain specialist and because the focal issue is Claimant's pain, the ALJ's silence regarding Dr. Wilson's pain assessment is not only bewildering – it is error.  The ALJ must ordinarily accord such an assessment considerable weight when it emanates from a treating physician.  *See Crawford v. Comm'r of Social Sec.,* 363 F.3d 1155, 1159 (11th Cir. 2004).  He may not rely only on the portions of the treating doctor's reports that comport with his own view of Claimant's abilities and ignore the portions that support a contrary result. *See, e.g.*, *Vicari v. Astrue*, 2009 WL 331242, *4 (E.D.N.Y. February 10, 2009).

In any case, he must provide good cause for rejecting all or part of a treating physician's opinion.  *See* C.F.R. § 404.1527(d); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists to discredit a treating doctor's opinion when it is conclusory, or inconsistent with the doctor's own medical records, or "not bolstered by the evidence, or where the evidence supported a contrary finding." *Lewis*, 125 F.3d at 1440.  If the ALJ has good cause to disregard Dr. Wilson's opinion, he may do so, but he "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error."  *See MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (citing *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985)).

In the instant case, the ALJ did not assign specific weight to Dr. Wilson's opinion and did not give specific reasons for rejecting the crucial part of that opinion.  He gave specific reasons for rejecting Claimant's testimony about her pain.  He also gave specific reasons for rejecting a small part of Dr. Wilson's opinion *regarding limitations on standing and walking.*  He did not,

however, expand the discussion to Dr. Wilson's opinion as a whole, including Dr. Wilson's assessment of her physical capacity to sustain full-time work or his assessment of Claimant's pain level and its effect on her work capacity. This failure constitutes reversible error. *See Lewis*, 125 F.3d at 1440.

The Commissioner's brief did not acknowledge the ALJ's failure to address Dr. Wilson's pain assessment and assumed that the ALJ's rejection of a small portion of Dr. Wilson's opinion – the standing/walking limitations – constituted a rejection of his whole opinion. The court does not agree, but assuming *arguendo* that this approach were viable, the court finds that the ALJ did not establish good cause for his rejection of Dr. Wilson's opinion. The ALJ attempted to establish good cause by pointing out what he calls inconsistent "treatment modalities." (R. 21). His ensuing discussion first mentioned Claimant's pain medication and then focused on Claimant's lack of "significant treatment" such as epidural injections, surgical and emergency room treatment, and hospitalizations. (R. 20-21).

Although the ALJ acknowledged that Claimant takes pain medication, he did not find that her medication supported her pain allegations, noting that she "tolerates her medications well." (R. 21). While Dr. Wilson's records reflected that Claimant had difficulty functioning with her previous medications, his September 2006 chart notes did indicate that she tolerated morphine, the new medication, well. However, toleration of medication is not the same thing as successful pain alleviation, and to the extent that the ALJ implies that these two coincide and support his findings, he is wrong. In fact, the very chart note that states Claimant is tolerating the morphine well also reflects that she had not noticed much improvement on it. The ALJ also states that "[t]here is no indication that the claimant experiences disabling side effects of medication." (R.

21). However, this statement once again ignores Dr. Wilson's pain assessment that "Pain and/or drug side effects can be expected to seriously limit effectiveness due to distraction, inattention, drowsiness, etc." (R. 181). The ALJ noted this part of Dr. Wilson's opinion in step two, but did not acknowledge it in his step four pain standard analysis, nor did he explain why he was impliedly rejecting it. Therefore, substantial evidence does not support the ALJ's finding that the Claimant's pain medications successfully alleviate any pain to the extent that she can work. In any event, the ALJ did not, through his discussion regarding her pain mediation, establish "good cause" for rejecting her treating physician's opinion.

  The ALJ also points to Claimant's lack of "invasive procedures, including spinal injections" to alleviate her pain as support for his rejection of part of Dr. Wilson's opinion. (R. 21). This focus ignores the fact that Claimant has indeed undergone epidural injections for pain. Claimant testified that she had received a series of epidural injections in the past with the result of *increased* rather than decreased pain, and therefore refused to undergo *additional* injections in light of those past problems. The records of a second treating physician, Dr. Ken Jaffe, support her testimony, reflecting that she advised him of her poor history with epidural blocks at the time of her visit. In light of her bad experience with epidural injections, the ALJ's focus on her refusal to receive additional injections is unreasonable and does not establish good cause. The basis for her refusal to receive more injections was more likely just what she testified – a reflection of her past history with the epidural injections rather than a reflection of her pain level. Indeed, her medical history of receiving a series of epidural injections for pain – even if they did not work – supports her allegations of moderately severe to severe pain and is contrary to the ALJ's finding that she had not undergone invasive procedures. Further, the fact that her doctor

prescribed morphine also indicates that her doctor believed she suffered from pain.

Further, in pointing to the lack of invasive procedures, the ALJ appears to assume that severe pain and invasive procedures must go hand in hand. The ALJ acknowledged that Dr. Jaffe identified the Claimant as a "good candidate for surgical intervention and possible discectomy (surgical removal of the central portion of an intervertebral disc) and fusion." (R. 140). Thus, even though Claimant's treating physician diagnosed disc disease significant enough to warrant surgery on her neck, the ALJ reasoned that her failure to actually undergo the recommended surgery must mean that her pain was not severe. Claimant testified that she did not have the surgery because she was "scared." (R. 207). The government presented no evidence that Claimant's fear was groundless and that a discectomy and/or fusion presented little risk to Claimant[2] or that surgery would cure Claimant or render her able to work. Under these circumstances, her failure to undergo an operation does not establish "good cause" for rejecting her treating physician's evaluation of her pain; the ALJ's implication that she may not allege severe pain without first undergoing a surgical procedure to attempt to alleviate it is unreasonable. *See, e.g., Hanrahan v. Shalala*, 831 F. Supp. 1440, 1448-49 (E.D. Wis. 1993) (rejecting as unreasonable ALJ's finding that claimant's refusal to undergo surgery indicated "a willingness to tolerate the status quo" and that her allegations of severe pain were not credible).

As further support for rejecting a part of her treating physician's opinion, the ALJ relies upon the report of consulting examiner Dr. Bruce Romeo. However, to the extent the report of a one-time examiner conflicts with the finding of Claimant's treating physician, the court must

---

[2]20 C.F.R. § 404.1530(c) exempts a patient from following a prescribed medical treatment if it is "very risky" for that patient.

give greater weight to that of the treating physician absent good cause for doing otherwise. *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988); §404.1527(d). Further, the fact that Dr. Wilson is a pain specialist who works at a pain clinic adds extra weight to his expertise and opinion. *See* §404.1527(d).

In short, the court finds that the ALJ did not show "good cause" for his rejection of Dr. Wilson's opinion and his reliance instead on Dr. Romeo's findings. He did not establish that Dr. Wilson's opinion was accompanied by no objective medical evidence, was wholly conclusory, or was contradicted by his own treatment notes. *See Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). In fact, Dr. Wilson based his opinion on objective medical evidence such as x-rays showing "significant degenerative arthritis of the knees, especially on the right" and an MRI of her lower back showing "degenerative disc disease and facet joint arthritis." (R. 181). In addition to the x-rays and MRI results upon which Dr. Wilson based his report, the medical records of treating physician Jaffe are consistent, stating that the MRI shows "significant cervical disk [sic] disease" "most severe at C4-5 and C5-6 with possible component of subligamentous herniation at C5-6," for which he suggested surgery and epidural blocks. (R. 140-41). His records also show that an MRI of her spine showed an "annular protruding disk [sic] and diffuse facet osteoarthritic changes." (R. 141). Thus, the evidence as a whole – including objective medical evidence of x-rays and MRI results noted not only by Dr. Wilson but also by treating physician Jaffe – bolsters Dr. Wilson's opinion.

Accordingly, this court finds that the ALJ failed to give substantial weight to Dr. Wilson's opinion and did not show good cause for failing to do so. He erred as a matter of law in rejecting Dr. Wilson's opinion, including the doctor's assessment of Claimant's pain.

## VII. CONCLUSION

For the reasons as stated, the court finds that the ALJ failed to show good cause for rejecting the opinions of the claimant's treating physician. Accordingly, substantial evidence does not support his decision. Therefore, the court will REVERSE the Commissioner's decision and will REMAND it for the ALJ to determine whether the claimant is entitled to Supplemental Security Income Payments.

The court will enter a separate Order.

DONE and ORDERED this the 22nd day of February, 2010.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE